IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE, TENNESSEE

| | |
|---|---|
| QUIANA JOHNSON, as parent and next friend of REGINALD DEWAYNE WALLACE II, a minor; KARISSA SWEAT; and WAYNNESIA BROOKS, <br><br> Plaintiffs, <br><br> vs. <br><br> METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY; JOE SHELTON, in his official and individual capacities; JOHN DOE POLICE OFFICERS #1-#20, in their official and individual capacities, <br><br> Defendants. | No. _____ <br><br> JURY DEMAND |

## COMPLAINT

COME NOW the Plaintiffs, Quiana Johnson, as parent and next friend of Reginald Dewayne Wallace II ("Ms. Johnson" and "Baby Reginald," respectively), Karissa Sweat ("Ms. Sweat") and Waynnesia Brooks ("Ms. Brooks," collectively, "Plaintiffs"), by and through the undersigned, pursuant to Fed. Rs. Civ. P. 7 and 8, and for their cause of action state as follows upon information and belief:

### PARTIES, JURISDICTION AND VENUE

1. Ms. Johnson is the biological mother of, and Reginald Dewayne Wallace ("Mr. Wallace") is the biological father of, Baby Reginald, who was born in Nashville, Davidson County, Tennessee, on May 20, 2009.

2. Ms. Sweat is Mr. Wallace's wife.

3. Mr. Wallace is the biological father of, Ms. Brooks.

4. Ms. Johnson, Baby Reginald, Ms. Sweat and Ms. Brooks are, and at all relevant times were, residents of Nashville, Davidson County, Tennessee.

5. Mr. Wallace was, at all relevant times, a resident of Nashville, Davidson County, Tennessee.

6. Defendant Metropolitan Government of Nashville and Davidson County ("Metro") is a political subdivision of the state of Tennessee, the duly-formed municipal government for, and the political entity that governs Davidson County, Tennessee; Metro is, and at all relevant times was, a resident of Nashville, Davidson County, Tennessee and, upon information and belief, is the appropriate entity to be named as a defendant in an action involving the acts, inactions and omissions of the Metropolitan Nashville Police Department ("Metro PD").

7. Defendant Joe Shelton ("Officer Shelton" or "Mr. Shelton") is, and at all relevant times was, a Metro PD officer and employee.

8. John Doe Police Officers #1-#20 are, and/or at all relevant times were Metro PD officers and employees.

9. The acts, inactions or omissions complained of herein occurred in Davidson County, Tennessee.

10. This Court possesses subject matter jurisdiction over all causes in the above-styles action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

11. This Court possesses personal jurisdiction over all parties to the above-styled action, and venue in this Court is proper, pursuant to 28 U.S.C. § 1391.

12. Defendants have waived sovereign immunity pursuant to the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101 *et seq.* ("GTLA").

## FACTS

13. Metro, through its subordinate agency, Metro PD, is responsible for the operation of police services in Nashville, Davidson County, Tennessee.

14. Metro, through its subsidiary agency, Metro PD, is responsible for the enactment, maintenance and operation of customs, policies, practices or procedures concerning police operations and the training, hiring, discipline or discharge, and supervision of Metro PD employees, including but not limited to Officer Shelton and John Doe Police Officers #1-#20.

15. In March 2007, Officer Shelton, while on duty, shot and killed a young man while before Officer Shelton's backup arrived.

16. At approximately 10:45 AM on March 12, 2010, Metro PD West Precinct officers responded to a 9-1-1 call complaining of activity at 1037 14th Avenue South, Nashville, Davidson County, Tennessee.

17. Officer Shelton responded to this call with his canine partner Memphis.

18. Police spotted Mr. Wallace and gave chase after Mr. Wallace fled.

19. Memphis located and engaged with Mr. Wallace just after 11:00 AM, biting and lacerating Mr. Wallace's skin.

20. Officer Shelton caught up to Memphis and Mr. Wallace, grabbed Mr. Wallace and began fighting him.

21. Mr. Wallace reached into his pocket to retrieve an Ipod personal music player and Officer Shelton opened fire on Mr. Wallace using his Metro PD-issued and/or authorized handgun.

22. Officer Shelton shot Mr. Wallace three times in the back, firing at least one of the three shots while Mr. Wallace was already lying on the ground.

23. Mr. Wallace suffered severe temporary and permanent physical and emotional injuries, including but not limited to three gunshot wounds, severe physical pain and severe emotional distress.

24. Some or all of John Doe Police Officers #1-#20 were present at and participated in the chase, fight and/or shooting of Mr. Wallace.

25. At approximately 1:00 PM, Mr. Wallace died as a result of multiple gunshot wounds.

26. At all times Mr. Wallace was unarmed.

27. Officer Shelton's intentional acts, inactions or omissions were conducted with deliberate indifference to Mr. Wallace's constitutional rights.

28. Mr. Wallace suffered a deprivation of his Fourth Amendment right to be free from unreasonable search and seizure.

29. Mr. Wallace suffered a deprivation of his Eighth Amendment right to be free from cruel and unusual punishment.

30. Mr. Wallace suffered a deprivation of his Fourteenth Amendment right to procedural and substantive due process, including but not limited to his right to personal privacy and bodily integrity.

31. Baby Reginald, Ms. Sweat and Ms. Brooks have suffered severe emotional distress, loss of companionship, and loss of enjoyment of life as a consequence of Officer Shelton's shooting, and the subsequent death, of Mr. Wallace.

## COUNT 1

### OFFICER SHELTON'S INDIVIDUAL CAPACITY LIABILITY - 42 U.S.C. § 1983

32. Paragraphs 1 through 31 are incorporated by reference as if fully set forth herein.

33. At all times, Officer Shelton was acting under color of state law.

34. Officer Shelton's intentional acts, inactions or omissions in connection with shooting an unarmed Mr. Wallace three times in the back deprived Mr. Wallace of his clearly-established rights:

    (a) to be free from unreasonable searches and seizures under the Fourth Amendment;

    (b) to be free from cruel and unusual punishment under the Eighth Amendment; and

    (c) to procedural and substantive due process, including but not limited to his right to personal privacy and bodily integrity, under the Fourteenth Amendment.

35. The deprivation of Mr. Wallace's constitutional rights was the cause-in-fact of Mr. Wallace's injuries and death.

36. The deprivation of Mr. Wallace's constitutional rights was the proximate cause of Mr. Wallace's injuries and death.

37. Mr. Wallace suffered severe temporary and permanent physical and emotional injuries, including but not limited to three gunshot wounds, severe physical pain and suffering and severe emotional distress.

38. At approximately 1:00 PM on March 12, 2010, Mr. Wallace died from multiple gunshot wounds.

39. Baby Reginald, Ms. Sweat and Ms. Brooks have suffered severe emotional distress, loss of companionship, and loss of enjoyment of life as a consequence of Officer Shelton's shooting, and the subsequent death, of Mr. Wallace.

## COUNT 2

## JOHN DOE POLICE OFFICERS #1-#20S' INDIVIDUAL CAPACITY LIABILITY –

## 42 U.S.C. § 1983

40. Paragraphs 1 through 39 are incorporated by reference as if fully set forth herein.

41. At all times, John Doe Police Officers #1-#20s' were acting under color of state law.

42. John Doe Police Officers #1-#20s' acts, inactions or omissions in connection with shooting an unarmed Mr. Wallace three times in the back deprived Mr. Wallace of his clearly-established rights:

(a) to be free from unreasonable searches and seizures under the Fourth Amendment;

(b) to be free from cruel and unusual punishment under the Eighth Amendment; and

(c) to procedural and substantive due process, including but not limited to his right to personal privacy and bodily integrity, under the Fourteenth Amendment.

43. The deprivation of Mr. Wallace's constitutional rights was the cause-in-fact of Mr. Wallace's injuries and death.

44. The deprivation of Mr. Wallace's constitutional rights was the proximate cause of Mr. Wallace's injuries and death.

45. Mr. Wallace suffered severe temporary and permanent physical and emotional injuries, including but not limited to three gunshot wounds, physical pain and suffering and emotional distress.

46. At approximately 1:00 PM on March 12, 2010, Mr. Wallace died from multiple gunshot wounds.

47. Baby Reginald, Ms. Sweat and Ms. Brooks have suffered severe emotional distress, loss of companionship, and loss of enjoyment of life as a consequence of Officer Shelton's shooting, and the subsequent death, of Mr. Wallace.

## COUNT 3

### METRO'S MUNICIPAL LIAILITY UNDER - 42 U.S.C. § 1983

48. Paragraphs 1 through 47 are incorporated by reference as if fully set forth herein.

49. At all times, Metro, its employees, agents and subordinates were acting under color of state law.

50. Upon information and belief, Metro and/or a municipal official with final decision-making authority have enacted, operated or maintained—or in the alternative, have experienced a sufficient number of constitutional violations, including but not limited to Officer Shelton's

previous shooting incident that resulted in the death of the person to be shot, to constitute--the following customs, policies, practices or procedures:

(a) failing to train Metro PD officers;

(b) failing to train Officer Shelton in particular;

(c) failing to discharge or otherwise properly penalize Metro PD officers who are involved in shootings of citizens;

(d) failing to discharge or otherwise properly penalize Officer Shelton in particular following his previous shooting incident;

(e) improperly hiring incompetent and untrained police officers, including but not limited to Officer Shelton;

(f) failing to adopt, establish or implement policies aimed at avoiding the use of lethal force against unarmed citizens by Metro PD officers;

(g) failing to properly supervise and discipline Metro PD officers;

(h) failing to properly supervise and discipline Officer Shelton in particular;

(i) permitting Officer Shelton, an incompetent and untrained police officer, to participate in the pursuit of Mr. Wallace;

(j) mishandling the pursuit and arrest of unarmed citizens like Mr. Wallace; and

(k) creating a risk of harm by assigning responsibility for pursuits of criminal suspects to police officers, including but not limited to Officer Shelton, who presented known risks of harm to citizens like Mr. Wallace and to Mr. Wallace in particular.

51.     Upon information and belief, Metro and/or a municipal official with final decision-making authority knew or should have known about the above customs, policies, practices or procedures.

52.     Upon information and belief, Metro and/or a municipal official with final decision-making authority remained deliberately indifferent to the unconstitutional characteristics of the above customs, policies, practices or procedures.

53.     The above customs, policies, practices or procedures caused the violation of Mr. Wallace's constitutional rights under the Fourth, Eighth and Fourteenth Amendments.

54.     Mr. Wallace suffered severe temporary and permanent physical and emotional injuries, including but not limited to three gun shot wounds, physical pain and suffering and emotional distress.

55.     At approximately 1:00 PM on March 12, 2010, Mr. Wallace died from multiple gunshot wounds.

56.     Baby Reginald, Ms. Sweat and Ms. Brooks have suffered severe emotional distress, loss of companionship, and loss of enjoyment of life as a consequence of Officer Shelton's shooting, and the subsequent death, of Mr. Wallace.

### COUNT 4

### *RESPONDEAT SUPERIOR* NEGLIGENCE/WRONGFUL DEATH - GTLA

57.     Paragraphs 1 through 56 are incorporated by reference as if fully set forth herein.

58. At all times, Officer Shelton and John Doe Police Officers #1-#20 were acting within the scope of their employment with Metro and, as such, their acts, inactions and omissions are attributable to Metro under the *respondeat superior* doctrine, pursuant to Tenn. Code Ann. § 29-20-205.

59. At all times, Officer Shelton and John Doe Police Officers #1-#20 owed Mr. Wallace a duty of ordinary care.

60. Officer Shelton and/or John Doe Police Officers #1-#20 breached the duty of care owed to Mr. Wallace by:

   (a) exercising excessive force in the apprehension of Mr. Wallace;

   (b) failing to properly evaluate the situation before discharging one or more Metro PD-issued firearms; and/or

shooting (and killing) an unarmed Mr. Wallace three times in the back.

61. Officer Shelton's and John Doe Police Officers #1-#20s' breaches of the duty of care were the cause-in-fact of Mr. Wallace's injuries and death.

62. Officer Shelton's and John Doe Police Officers #1-#20s' breaches of the duty of care were the proximate cause of Mr. Wallace's injuries and death.

63. Mr. Wallace suffered severe temporary and permanent physical and emotional injuries, including but not limited to three gunshot wounds, physical pain and suffering and emotional distress.

64. At approximately 1:00 PM on March 12, 2010, Mr. Wallace died from multiple gunshot wounds.

## COUNTT 5

## OFFICER SHELTON'S AND JOHN DOE OFFICERS #1-#20s' ASSAULT/METRO'S NEGLIGENCE – GTLA

65. Paragraphs 1 through 64 are incorporated by reference as if fully set forth herein.

66. At all times, Officer Shelton and John Doe Police Officers #1-#20 were acting within the scope of their employment with Metro.

67. Officer Shelton, by shooting an unarmed Mr. Wallace three times in the back, and/or John Doe Officers #1-#20, by participating in the pursuit and shooting of Mr. Wallace, intentionally, voluntarily or recklessly brought about an unconsented harmful or offensive contact with Mr. Wallace, and are therefore liable for common law assault.

68. At all times, Metro owed Mr. Wallace a duty of ordinary care.

69. Upon information and belief, Metro and/or a Metro employee have enacted, operated or maintained the following customs, policies, practices or procedures, each of which breached the duty of care owed to Mr. Wallace:

   (a) failing to train Metro PD officers;

   (b) failing to train Officer Shelton in particular;

   (c) failing to discharge or otherwise properly penalize Metro PD officers who are involved in shootings of citizens;

   (d) failing to discharge or otherwise properly penalize Officer Shelton in particular following his previous shooting incident;

(e) improperly hiring incompetent and untrained police officers, including but not limited to Officer Shelton;

(f) failing to adopt, establish or implement policies aimed at avoiding the use of lethal force against unarmed citizens by Metro PD officers;

(g) failing to properly supervise and discipline Metro PD officers;

(h) failing to properly supervise and discipline Officer Shelton in particular;

(i) permitting Officer Shelton, an incompetent and untrained police officer, to participate in the pursuit of Mr. Wallace;

(j) mishandling the pursuit and arrest of unarmed citizens like Mr. Wallace; and

(k) creating a risk of harm by assigning responsibility for pursuits of criminal suspects to police officers, including but not limited to Officer Shelton, who presented known risks of harm to citizens like Mr. Wallace and to Mr. Wallace in particular.

70. Metro's breaches of the duty of care were the cause-in-fact of Mr. Wallace's injuries and death.

71. Metro's breaches of the duty of care were the proximate cause of Mr. Wallace's injuries and death.

72. Mr. Wallace suffered severe temporary and permanent physical and emotional injuries, including but not limited to three gunshot wounds, physical pain and suffering and emotional distress.

73. At approximately 1:00 PM on March 12, 2010, Mr. Wallace died from multiple gunshot wounds.

## COUNT 6

## METRO'S NEFLIGENT INFLICTION OF EMOTIONAL DISTRESS - GTLA

74. Paragraphs 1 through 73 are incorporated by reference as if fully set forth herein.

75. At all times, Officer Shelton and John Doe Police Officers #1-#20 were acting within the scope of their employment with Metro and, as such, his acts, inactions and omissions are attributable to Metro under the *respondeat superior* doctrine, pursuant to Tenn. Code Ann. § 29-20-205.

76. At all times, Metro, Officer Shelton and John Doe Police Officers #1-#20 owed Baby Reginald and Msses. Sweat and Brooks a duty of ordinary care.

77. Metro, Officer Shelton and/or John Doe Police Officers #1-#20 breached the duty of care owed to Baby Reginald and Msses. Sweat and Brooks by:

   (a) exercising excessive force in the apprehension of Mr. Wallace;

   (b) failing to properly evaluate the situation before discharging one or more Metro PD-issued firearms; and/or

   (c) shooting (and killing) an unarmed Mr. Wallace three times in the back.

78. Officer Shelton's and John Doe Police Officers #1-#20s' breaches of the duty of care were the cause-in-fact of Baby Reginald's, Ms. Sweat's and Ms. Brooks's severe emotional distress.

79. Officer Shelton's and John Doe Police Officers #1-#20s' breaches of the duty of care were the proximate cause of Baby Reginald's, Ms. Sweat's and Ms. Brooks's severe emotional distress.

80. Baby Reginald, Ms. Sweat and Ms. Brooks have suffered severe emotional distress.

## COUNT 7

## OFFICER SHELTON'S AND JOHN DOE OFFICERS #1-#20s' OUTRAGEOUS CONDUCT DIRECTED AT MR. WALLACE

81. Paragraphs 1 through 80 are incorporated by reference as if fully set forth herein.

82. Officer Shelton's and John Doe Police Officers #1-#20s' acts, inactions or omissions were intentional or reckless.

83. Officer Shelton's and John Doe Police Officers #1-#20s' acts, inactions or omissions were so outrageous that they are not tolerated by civilized society.

84. Mr. Wallace suffered severe temporary and permanent physical and emotional injuries, including but not limited to three gunshot wounds, physical pain and suffering and emotional distress.

## COUNT 8

## OFFICER SHELTON'S AND JOHN DOE OFFICERS #1-#20s' OUTRAGEOUS CONDUCT DIRECTED AT BABY REGINALD AND MSSES. SWEAT AND BROOKS

85. Paragraphs 1 through 84 are incorporated by reference as if fully set forth herein.

86. Officer Shelton's and John Doe Police Officers #1-#20s' acts, inactions or omissions were intentional or reckless.

87. Officer Shelton's and John Doe Police Officers #1-#20s' acts, inactions or omissions were so outrageous that they are not tolerated by civilized society.

89. Baby Reginald, Ms. Sweat and Ms. Brooks have suffered severe emotional distress.

## PRAYER FOR RELIEF

**WHEREFORE**, premises considered, Plaintiffs respectfully pray, as follows:

A. That process be issued to and served upon each Defendant;

B. Because Tennessee law states that a plaintiff is not entitled to receive a jury award in excess of the amount prayed for and out of an abundance of caution, that Plaintiffs be awarded $10,000.000.00 in compensatory damages, although they will accept less if a jury so decides;

C. Because Tennessee law states that a plaintiff is not entitled to receive a jury award in excess of the amount prayed for and out of an abundance of caution, that Plaintiffs be awarded $10,000.000.00 in punitive damages in connection with their § 1983 and outrageous conduct causes of action, although they will accept less if a jury so decides;

D. That Plaintiffs be awarded all reasonable and necessary attorney fees incurred in the above-styled action;

E. That a jury of 12 be empanelled to resolve all causes described in the above-styled action;

F. That Defendants be ordered to pay all court costs;

G. That Defendants be ordered to pay all of Plaintiffs' discretionary costs;

H.   That Defendants be ordered to pay all of Plaintiffs' other recoverable costs and expenses;

and

I.   That Plaintiffs be awarded any and all other relief to which they are entitled.

Respectfully submitted,

**ERNEST B. WILLIAMS IV, PLLC**

_/s/ Michael Schwegler_ — Signed with permission
**ERNEST B. WILLIAMS, IV, BPR # 12301**
**MICHAEL B. SCHWEGLER, BPR # 22563**
P.O. Box 159264
Nashville, Tennessee 37215
(615) 372-0993

**LAW OFFICE OF WOODS & WOODS**

_/s/ Allen Woods_
**LARRY WOODS, BPR # 2395**
**ALLEN WOODS, BPR # 23103**
P.O. Box 128498
Nashville, TN 37212
(615) 321-1426

**Counsel for Plaintiff**