UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

QUIANA JOHNSON, as parent and next )
friend of REGINALD DEWAYNE )
WALLACE II, a minor; KARISSA SWEAT, )
WAYNNESIA BROOKS, and WILLIAM )
WALLACE )
                                               ) No. 3:10-0589
v.                                          ) JUDGE CAMPBELL
                                               )
METROPOLITAN GOVERNMENT OF )
NASHVILLE AND DAVIDSON COUNTY; )
JOE SHELTON, in his official and )
individual capacities; JOHN DOE POLICE )
OFFICERS #1-#20, in their official and )
individual capacities )

MEMORANDUM

I. Introduction

In this 42 U.S.C. § 1983 suit brought after the fatal shooting of Reginald Wallace by police officer Joe Shelton ("Officer Shelton"), the Metropolitan Government of Nashville and Davidson County ("Metro") and Officer Shelton each filed a Motion to Dismiss the Second Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Docket Nos. 34, 38.) The two motions are fully briefed and, for the reasons that follow, the motions are granted.

II. Factual and Procedural Background

The facts are taken from the Second Amended Complaint, and the Court accepts the factual allegations as true for the purpose of ruling on the Rule 12(b)(6) motions. At approximately 10:45 a.m., on March 12, 2010, Metro police officers responded to a 911 call complaining about activity at 1037 14th Avenue South in Nashville. Officer Shelton responded to

1

the call with his canine partner, Memphis. Police spotted Reginald Wallace, and when Wallace fled, the police gave chase. Memphis located Wallace just after 11:00 a.m., and engaged Wallace by biting him and lacerating his skin. When Officer Shelton caught up with Memphis, Officer Shelton grabbed Wallace and began fighting with him. Wallace, who was unarmed, reached into his pocket to retrieve an IPod personal music player. Officer Shelton opened fire on Wallace with his service firearm, shooting Wallace three times in the back, and firing at least one of the bullets while Wallace was already lying on the ground.

Shortly after the shooting, another police officer brought Wallace's brother, William Wallace, to the scene of the shooting against his will. William observed his brother on the ground after the shooting and perceived him to be seriously or fatally injured. Reginald Wallace suffered severe and permanent physical and emotional injury, and he died of his wounds at approximately 1:00 p.m. the same day.

Some or all of the other John Doe police officers #1-#20 were present and participated in the chase, the fight, the shooting of Wallace, and/or the bringing of William Wallace to the scene. Prior to Wallace's death, in March 2007 and while on duty, Officer Shelton shot and killed a young man before police backup arrived. (Docket No. 33, Second Amended Complaint ¶¶ 15-26.)

This lawsuit was brought by Quiana Johnson, the biological mother of the decedent's minor son, Reginald Dewayne Wallace II ("Baby Reginald"); Karissa Sweat, the decedent's surviving spouse; Waynnesia Brooks, the decedent's daughter; and William Wallace. Plaintiffs allege § 1983 claims for violation of Wallace's Fourth Amendment rights against Officer Shelton and the John Doe police officers in their individual capacities (Counts 1 and 2); a § 1983 claim

against Metro for negligent hiring and for failure to train, discipline, and supervise police officers and Officer Shelton in particular (Count 3); a wrongful death claim against Metro under *respondeat superior* and supervisory liability negligence theories pursuant to the Tennessee Governmental Tort Liability Act ("TGTLA") (Count 4); an assault claim against Officer Shelton and the John Doe police officers, together with a negligence claim against Metro under the TGTLA (Count 5); a claim for negligent infliction of emotional distress against Metro under the TGTLA (Count 6); a claim for outrageous conduct against Officer Shelton and the John Doe police officers for their conduct directed at Reginald Wallace (Count 7); and a claim for outrageous conduct against Officer Shelton and the John Doe police officers for their conduct directed at Baby Reginald, Ms. Sweat, Ms. Brooks, and William Wallace (Count 8). Plaintiffs seek $10 million in compensatory damages and $10 million in punitive damages.[1]

III. Analysis

A. The Rule 12(b)(6) Standard

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept as true the allegations made in the Second Amended Complaint and construe the allegations in the Plaintiffs' favor. See Morgan v. Church's Fried Chicken, 829 F.2d 10, 11-12 (6th Cir. 1987). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, — U.S. —, 129 S.Ct. 1937, 1949 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

---

[1] In the companion case of Johnson, et al. v. Metropolitan Government of Nashville and Davidson County, et al., No. 3:10-0726, in which the same Plaintiffs allege the same state-law tort claims against the same Defendants, a Report and Recommendation is pending before District Judge William Haynes on Plaintiffs' unopposed motion to remand the case to state court.

3

570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Factual allegations must be sufficient to raise the right to relief above the speculative level. Twombly, 550 U.S. at 555. Bare assertions amounting to nothing more than a formulaic recitation of the elements of a constitutional claim cannot suffice. Iqbal, 129 S.Ct. at 1951.

B.  Plaintiffs' standing

Metro and Officer Shelton contend that Quiana Johnson, as parent and next friend of Baby Reginald, Waynnesia Brooks, and William Wallace lack standing to assert § 1983 claims against them, and consequently, these individuals should be dismissed as Plaintiffs from the § 1983 claims. In response to the motions to dismiss, Plaintiffs concede that Ms. Sweat, the surviving spouse of the decedent, is the only person who has standing to bring the decedent's personal § 1983 claims against Officer Shelton, the John Doe police officers, and Metro. (Docket No. 40-1 at 2, 4 (citing Tenn. Code Ann. § 20-5-106; Jaco v. Bloechle, 739 F.2d 239, 241 (6th Cir. 1984).) In light of this clarification, Plaintiffs claim no further action is necessary, but the Court disagrees. The motions to dismiss Johnson, acting on behalf of Baby Reginald, Brooks, and Wallace as plaintiffs in the federal causes of action (Counts 1 through 3) will be granted for lack of standing.

C.  Municipal Liability

Metro contends that Plaintiff Sweat's § 1983 claims for municipal liability must be dismissed under Iqbal and Twombly because the Second Amended Complaint is devoid of sufficient facts to support plausible claims for negligent hiring, for failure to train, discipline and supervise police officers, and for adoption of improper pursuit policies or customs. A claim is

4

plausible when the Plaintiff pleads facts that allow the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. Iqbal, 129 S.Ct. at 1949. Threadbare recitals of the elements of a cause of action, supported only by conclusory statements, fail to meet the plausibility standard. Id. The Second Amended Complaint exemplifies the type of conclusory pleading of legal claims, without sufficient factual support, that can no longer pass muster in light of Iqbal and Twombly.

To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability in violation of Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 694 (1978), the Court must carefully test the link between Metro's allegedly inadequate hiring decision and the particular injury alleged. See Board of County Commissioners v. Brown, 520 U.S. 397, 410 (1997). "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be a deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" Id. at 411. The Second Amended Complaint contains absolutely no facts concerning Metro's decisions to hire Officer Shelton or any of the John Doe police officers. There is no factual underpinning from which a conclusion plausibly could be drawn that there was anything in the backgrounds of these police officers to alert Metro that hiring them would result in the deprivation of a citizen's constitutional rights, and that Metro was deliberately indifferent to the risk posed.

Similarly, the Second Amended Complaint lacks any supporting facts to patch the threadbare legal claims for failure to train, supervise and discipline police officers, and for

5

adoption of improper pursuit policies or customs. Plaintiff's factual pleading fails to illuminate Metro's policies or customs on any of these topics in general, and it does not explain how Metro's policies, customs, or practices constitute deliberate indifference to the constitutional rights of citizens. There are no facts to support Plaintiff's conclusory claim that such deficiencies are closely related to, or actually caused, Wallace's injury and death. See Berry v. City of Detroit, 25 F.3d 1342, 1346-47 (6th Cir. 1994); Howard v. City of Girard, 346 Fed. Appx. 49, 51-52 & n.2 (6th Cir. 2009); Heyne v. Metropolitan Nashville Public Sch., 686 F.Supp.2d 724, (M.D. Tenn. 2009); Hutchison v. Metropolitan Gov't. of Nashville and Davidson County, 685 F.Supp.2d 747, 750-51 (M.D. Tenn. 2010).

Other than the facts describing the Wallace shooting, the only other pertinent fact included in the pleading is the allegation that, "[i]n March 2007, Officer Shelton, while on duty, shot and killed a young man while before (sic) Officer Shelton's backup arrived." (Docket No. 33 ¶ 15.) This statement does not even allege that the prior shooting was unlawful. Plaintiff "must show prior instances of unconstitutional conduct demonstrating that [Metro] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." Fisher v. Harden, 398 F.3d 837, 849 (6th Cir. 2005). No facts are supplied in the Second Amended Complaint, however, concerning the circumstances of the prior shooting, and no factual link is drawn between the prior shooting, Metro's alleged failure to train, supervise, or discipline Officer Shelton adequately, and the shooting of Wallace.[2] See City of Canton v.

---

[2] Metro appends to its reply brief a "Supplement Report" concerning the March 2007 shooting by Officer Shelton (Docket No. 45-1, Ex. A), but the Court declines to consider the report. The Court's focus at this time is on whether Plaintiff included sufficient facts in her Second Amended Complaint to satisfy the Iqbal and Twombly standards.

6

Harris, 489 U.S. 378, 385 (1989) (noting first inquiry in any case alleging municipal liability is whether there is a direct causal link between municipal policy or custom and the alleged constitutional deprivation).

Metro cannot be held liable under Monell "for the actions of a rogue official[,]" even if Officer Shelton could be characterized as such. See Arnold v. Metropolitan Gov't of Nashville and Davidson County, 2009 WL 2430822 at *3 (M.D. Tenn. Aug. 6, 2009). "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." City of Canton, 489 U.S. at 390-391. Rather, Plaintiff must produce facts showing a plausible right to relief because Metro was deliberately indifferent to the need to train, supervise or discipline police officers or Metro was deliberately indifferent to improper pursuit policies or customs, and that such inadequacies were likely to result in the violation of a citizen's constitutional rights. Id. at 390. Plaintiff Sweat's pleading on municipal liability has "stop[ped] short of the line between possibility and plausibility of 'entitlement to relief." Iqbal, 129 S.Ct. at 1949; Hutchison, 685 F.Supp.2d at 751. Thus, the § 1983 claims against Metro must be dismissed for failure to state a claim.

D. State Law Tort Claims

Finally, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over the state-law tort claims. The "Tennessee legislature has expressed a clear preference that TGTLA claims be handled by its own state courts." Heyne, 686 F.Supp.2d at 735. This unequivocal preference is an exceptional circumstance under § 1367 for declining supplemental jurisdiction. Id. Further, the Court finds that judicial economy is best served by allowing the

7

state court to consider the state-law tort claims, which likely will be remanded to state court shortly in the companion Johnson case, No. 3:10-0726. The Court will dismiss the state-law tort claims raised in this case without prejudice for lack of jurisdiction.

IV. CONCLUSION

For all of the reasons stated, the Metropolitan Government's Motion To Dismiss Second Amended Complaint (Docket No. 34) and Defendant Joe Shelton's Motion To Dismiss Plaintiffs' Second Amended Complaint (R.33) For Failure To State A Claim (Docket No. 38) will be granted. Quiana Johnson, as parent and next friend of Baby Reginald, Waynnesia Brooks, and William Wallace will be dismissed as plaintiffs from the § 1983 claims (Counts 1 through 3) for lack of standing. Plaintiff Karissa Sweat's § 1983 claims for municipal liability against Metro (Count 3) will be dismissed with prejudice for failure to state a claim. All state-law tort claims (Counts 4 through 8) will be dismissed without prejudice for lack of jurisdiction.

The only claims remaining for litigation are Plaintiff Sweat's § 1983 claims brought against Officer Shelton and the John Doe police officers in their individual capacities for the alleged violation of Reginald Wallace's Fourth Amendment rights (Counts 1 and 2).

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE